Mr. Bogan May it please the court, Brad Bogan for Huerta-Rodriguez. Mr. Huerta pleaded guilty to illegally re-entering the United States after having been removed under 18 U.S.C. section 1326. At sentencing, the district court erred in determining that one of his prior convictions was for an aggravated felony, which subjected him to a higher penalty under 1326b2. Now, we don't challenge the sentence in this case. What we're asking the court to do is reform the judgment because the judgment just lists the statute of conviction as 1326. That's all you want is just the designation of b2? I want the designation of b1. b1, I'm sorry. That's all you want? Yes. And we set this for an argument for you to tell us that? That's the only relief that we're asking for here, and that carries consequences. As this court has recognized before, the fact that a defendant has a prior aggravated felony conviction potentially carries adverse consequences in any future immigration proceedings. I'm not making light of the relief you're asking, but I thought there was more. So if we say, yeah, we'll do that, you're done? Yes. All right. And we can do that without remanding? Yes, that's correct. Sometimes this court has remanded with instruction. Sometimes this court has reformed the judgment itself. Does your office have a view on when we do one versus the other? My office doesn't have a position. And in past cases, I don't remember if we've probably taken one or the other or just said to the court, you know, whichever one the court decides. Oftentimes, though, it's probably better for this court to reform the judgment directly because sometimes things get lost in the shuffle on remand and instructions might not be carried out. Flush out the consequences of reforming the judgment as you request. Well, so it would reflect 1326B1. And so in future immigration proceedings, there would not be a judgment reflecting a conviction for an aggravated felony under B2. And a conviction for an aggravated felony is very serious in the immigration context. It's essentially a permanent bar from ever receiving status to remain in the United States, which was important to Mr. Huerta because he had spent some time in the United States in the past and has family here. So, you know, if in the future there were some way for him to get status in the United States, that would be important to him. But your client did plead guilty under 26B2, 1326B2, in his first illegal reentry proceedings, correct? I'm not sure that's correct. The judgment from the first 1326 lists the statute of conviction as 1326A and just identifies it as illegal reentry into the United States. Now, the pre-sentence report in that case said that his previous Iowa conviction for burglary was an aggravated felony, meaning that in that first 1326, he would be subject to an enhanced penalty under B2. But the judgment just reflects 1326A. So, I mean, the statement of reasons in that case indicates that the district court adopted the PSR, but the judgment is essentially silent on the B numbers of B2. The indictment listing illegal reentry talked about violation of 1326A and B1 and 2. The indictment in this case? Well, this was back in 2015. That's typical for the indictments in the Del Rio Division in the Western District of Texas. The indictment practice varies from division to division, but oftentimes in Del Rio, the illegal reentry indictments will say, will cite 1326A and B1 slash 2, but the indictment doesn't actually allege a prior conviction, which would be necessary to trigger those penalties. And so when a defendant goes in and pleads guilty, as in this case, there's no admission to a prior conviction. There's generally no admission to having been convicted under a particular subsection of the statute, which is unlike Gamboa Garcia, an earlier case where this court… And the PSR back then identified the prior conviction for burglary as an aggravated felony, right? Yes, which we now know under Mathis and other cases is not, in fact, an aggravated felony. And, in fact, it wasn't even an aggravated felony at the time under that provision under the Supreme Court's decision in Taylor, which had held that generic burglary does not include burglaries of things other than structures. And that's why Iowa burglary also is not an aggravated felony. So, I mean, that's an important point. In the earlier cases, Gamboa Garcia and Piedra Morales, the defendant had previously pleaded guilty to illegal reentry under B2. Huerta did not do that in this case, and the judgments in the two prior legal reentries in Huerta's cases just reflect 13… The first one says 1326A. The second one says 1326. So there's nothing like there was in Gamboa Garcia or Piedra Morales that would establish that those were, in fact, aggravated felonies for purposes of this illegal reentry prosecution. And another thing is that the… It's not enough for a defendant to be convicted of 1326 after having sustained a conviction for an aggravated felony. A 1326 is only an aggravated felony if it was… if the defendant was previously deported on the basis of a prior aggravated felony. And here there's nothing in the record that shows what the basis for Huerta's prior removals were. So the simple fact that there's this temporal relationship between what was originally considered to be an aggravated felony, the burglary, and then the two later illegal reentries, that's not enough, absent the showing that he had been removed on the basis of something that had been determined to be an aggravated felony, which the burglary was not, and the government concedes that at this point, and there's nothing showing that the two prior illegal reentries were determined to be aggravated felonies, or at least there's no judgment that was entered showing those to be aggravated felonies. Unless the Court has any other questions, I'll turn it over to the government. All right. Thank you, sir. Richter. May it please the Court. Zachary Richter for the United States. What's important for the government here is getting the statute right, and so I want to start by diving into the statutory text of 1101A43-0. An illegal reentry is an aggravated felony when the defendant was previously deported on the basis of a conviction for another aggravated felony. That language, was previously deported in the past tense and referring to previously, according to several circuits, all points back to the time of deportation. So, too, does the language on the basis of a conviction for, because even if the legal landscape changes over time, as it has here over decades, the basis for the deportation doesn't change. That basis for that deportation occurred at the time of the deportation. So looking at that entire statutory text, the best reading of that is to say that we look to the status of the aggravated felony at the time of the deportation. Now, picking up on the argument that my colleague ended with, that phrase, on the basis of, that issue was waived by the defendant. It was not raised in the district court at any point. In the district court, the defendant argued only that because the original Iowa burglary was not an aggravated felony, that no subsequent illegal reentry could be an aggravated felony. And that was the only argument as well in the opening brief on appeal. Nevertheless, if this Court is inclined to look beyond that waiver, it's a fair inference from the record that the Iowa burglary was considered an aggravated felony at the time of that original deportation, and that that was the basis for the deportation. Not only is there the close proximity of those two events, but the Iowa burglary was considered an aggravated felony at the time. That's apparent from the defendant's concession in his first illegal reentry prosecution, where he did not contest that issue at all. And it's also clear from looking at Eighth Circuit precedent from the time, including up to the Eighth Circuit decision that was reversed by the Supreme Court in Mathis. So we have an aggravated felony conviction. We know that that is a strong basis for deportation because it avoids many kinds of discretionary relief in immigration court. And so the district court can readily infer that that was the basis for the deportation at the time. So the text of the statute here supports the idea that we look back to that aggravated, what was the status of that burglary at the time of that deportation. The canon against, the canon on surplusage also supports that result, because if you adopt the defendant's view of the statute here and all of the illegal reentries, he has three subsequent legal reentries. If all of those fall like dominoes after the status, the legal landscape on burglary changes, then that provision in the aggravated felony definition, 1101A43O, never does any work, because the defendant will always not have an aggravated felony to begin with. If 1101A43O is to accomplish anything, then the illegal reentry has to have independent significance. The government would just go back and prove the original aggravated felony otherwise. It's also most consistent with this court's case law to view the statute in this way. The two cases that have been most discussed, Gamboa Garcia and Piedra Morales, both point to interests in finality and avoiding repeatedly reconsidering arcane issues. When the court interprets the statute as the government suggests, then in any case where the defendant contests whether the basis of the deportation was an aggravated felony, the district court can simply look to those immigration records and determine the basis for the deportation at the time of that deportation. There's no need to look decades back and undertake a modified categorical or categorical analysis of a state statute based on old state records. Of course, the defendant didn't contest that in this case, which is why we say the issue is waived, so that record wasn't made, but that is the easier approach and the approach that's suggested and supported by Gamboa Garcia and Piedra Morales. There's also an interest in finality, because as my colleague pointed out, what the defendant is really interested in here is trying to overcome a final immigration decision and previous court determinations that were made a long time ago that he'd like to undo so that he can undo the categorization of this Iowa burglary as an aggravated felony. It makes no difference to his sentence now. He'll serve the same time no matter what. He's really trying to undertake a collateral attack on those original designations. When you interpret the statute as the government suggests and you look back to the time of the original deportation, you respect the finality of that original immigration decision. Now, the defendant can contest that decision in immigration court, before the Board of Immigration Appeals, and before an Article III Court of Appeals if the defendant disagrees with that determination at that time. And if my colleague is correct that the 1990 or 1991 case of Taylor decided this issue originally, then the defendant should have contested that point in 2007 when he was deported on the basis of that aggravated felony, that Iowa burglary. He did not. He did not contest it again later when he was arrested for illegal reentry and he was convicted and the district court adopted, without contest, a PSR that said he should be sentenced under 1326B2, the higher statutory penalty. And finally, I would just like to agree with my colleague that this Court reforming the judgment would be the appropriate result in this case if it disagrees with us. But for all these reasons, we would urge the Court to adopt the interpretation submitted by the government, look back to the nature of the crime at the time of the deportation, instead of letting all of these illegal reentries turn into something else based on a changed legal landscape later. And if there are no questions, I'll turn over the rest of my time to the Court. As you're walking away, sorry. Is there any upside in the government's view to reforming the judgment or having the judgment reformed to say that he was convicted and sentenced under 1326A and B2 rather than under 1326 with no subparts? I suppose that in a later proceeding that could make things clearer. We don't see that as necessary because as we understand the records of his first illegal reentry conviction and his second illegal reentry conviction, under this Court's decision, Segura, you can look to the fact that there was a PSR that said sentence under 1326B2 and that the district court adopted that PSR. That's enough for us to figure out later that this was a 1326B2. There may be some passing administrative convenience to the other alternative, but I don't think it makes a big deal either way, Your Honor. And with that, I'll turn the rest of my time over back to the Court. Thank you. Thank you, sir. Any rebuttal, Mr. Boggan? Just one point. The government talks about the danger of allowing defendants to continually relitigate prior determinations. There's nothing in the record that shows what the basis for Huerta's original removal was. It appears that his Iowa burglary conviction put him on the radar of immigration authorities, but he had never had legal status in the United States, so he could have been removed on that basis alone, regardless of whether the Iowa burglary was an aggravated felony or not. And in terms of relitigating and collaterally attacking prior determinations, again, this case is unlike Gamboa, Garcia, and Piedra Morales, because in those cases the records were clear and there were judgments reflecting that the defendant had pleaded guilty under B2. Here, none of Huerta's prior judgments indicate B2. They just indicate 1326 or 1326A. So for the court to hold for Huerta in this case would not call into doubt either of those prior judgments or create any kind of conflict among the prior records in this case. So unless there are any further questions, I will just ask the court to reform Huerta's judgment to reflect a conviction under 1326B1. Thank you, sir. Thank you.